This action has for its object the fixing of a boundary between two adjacent lots fronting on Burgundy Street in the city of New Orleans and is coupled with a demand for the removal of certain encroachments, consisting of structures and personal property, allegedly placed over the boundary line of the properties by the defendants.
Plaintiff, New Orleans and Northeastern Railroad, alleges in substance as follows: That it is the owner of a certain lot of ground (particularly described in the petition) situated in the Third District of New Orleans, which it acquired by purchase on December 30th 1911; that Mrs. Rose S. Redmann, one of the defendants, is apparently *Page 305 
the owner of record of a certain lot adjoining its property on the side toward Montegut Street; that Mrs. Redmann acquired the contiguous property by purchase from Nathan Lomm, another defendant, on February 16th 1932; that the adjoining premises are occupied either by Commercial Iron and Metal Company, Inc., the other defendant which is a Louisiana corporation having its principal place of business in New Orleans, or by Nathan Lomm with the permission of defendant Mrs. Redmann, either under lease or otherwise; that the defendants have refused to agree to the fixing of the boundary line between the property owned by it and the property apparently owned by Mrs. Redman; that it has had a survey made of the property fixing the boundary line between its lot and the adjoining property apparently owned by Mrs. Redmann; that the survey, copy of which is attached to the petition, shows that a building and fence, either constructed or owned by the defendants, is encroaching on its lands; that said survey further shows that certain junk, apparently owned by Commercial Iron and Metal Company, Inc., is piled upon plaintiff's land and that said building, fence and junk of defendants is located on its property without any right whatever. Plaintiff further alleges that it has endeavored to obtain the consent of defendants to fix, extrajudicially, the boundary line between the said lands; that defendants have refused to settle the matter amicably and that, therefore, it is necessary that a judicial fixing of the boundary be made in the manner prescribed by law; that a surveyor be appointed and sworn for the purpose of making a survey of the contiguous lands and to ascertain the correct limits of the respective properties in order that the encroachments on its property may be removed and the correct dividing line established so that defendants may be ordered to remove said encroachments. Plaintiff prayed for relief conformable to the allegations of its petition.
To this petition, defendants appeared and filed separate but similar exceptions of vagueness based on the premise that the petition did not set forth clearly whether the action is intended to be a petitory action or one in boundary and further excepted on the ground that the petition failed to disclose a right or cause of action. After a hearing, these exceptions were overruled and, in due course, the defendants filed separate answers. Mrs. Redmann, in her answer, admitted that she was the owner of record of the lot adjoining the property of plaintiff and that she refused to consent to a fixing of a boundary line but denied all other allegations contained in the petition. She further claimed that she was not the owner of the property at the time the petition was filed for the reason that the same had been adjudicated to the State of Louisiana in 1933 for unpaid state taxes for the years 1933, 1934 and 1935. Further answering in the alternative, Mrs. Redmann maintained that she has been in adverse possession of the part of the property on which the encroachments appear for a period of over thirty years and that, therefore, she had acquired ownership by prescription.
Defendant Lomm, in his answer, denied all of the allegations of the petition and further pleaded that he has no connection whatever with the property of Mrs. Redmann either as owner, lessee or occupant.
Defendant, Commercial Iron and Metal Company, Inc., denied all of the allegations contained in plaintiff's petition.
After a trial in the District Court on the foregoing issues, judgment was rendered in favor of plaintiff and against all defendants substantially in conformity with the prayer of the petition — that is, the court adjudicated the boundary line between the properties to be in accordance with plaintiff's claim and ordered the removal of all encroachments, both structural and movable, from the land belonging to plaintiff within 60 days and, in the event of noncompliance by defendants, then plaintiff would have the right to remove the same at defendants' expense; enjoined further trespass by defendants on plaintiff's property; ordered defendants, within 60 days from the date the judgment became executory, to deliver possession of the property to plaintiff and assessed all costs, including fees and expenses of the surveyor against the defendants. Defendants appealed to the Supreme Court from this adverse decision *Page 306 
and that Court has transferred the matter to us on the ground that we have jurisdiction of the contest. See La.Sup.,27 So.2d 321.
The defendants have reurged in this court the exceptions filed by them below and, in addition, they maintain that the judge committed reversible error in finding against them on the merits for numerous reasons set out in detail in the briefs and arguments of their counsel. Before we take up the exceptions and other matters relied upon by the defendants, it is apt to state certain proven facts which are not contested on this appeal.
It is fully established by the evidence that plaintiff is the owner of the property described in its petition and that the defendant, Mrs. Redmann, is the record title owner of property adjoining it, fronting on the side toward Montegut Street; that the survey which plaintiff caused to be made of its property is correct and the boundary line, set forth in the survey, has been confirmed by the surveyor appointed by the court to fix the limits, bounds and dividing line between the contiguous lots; that it has also been proven that there are structures on Mrs. Redmann's land which extend over the boundary line and that certain other movable property, consisting of junk, likewise encroaches on plaintiff's land.
[1] The first point raised by defendants in their exceptions is that plaintiff's petition is vague and indefinite in that it does not clearly set forth whether the suit is intended to be a petitory action or one in boundary. It is said that, since plaintiff seeks recognition of its ownership to the realty it claims and also the establishment of a boundary line, the action partakes of a petitory character as well as that of an action in boundary.
[2, 3] We find no substance whatever in this argument as a mere reading of the petition has been sufficient to disclose that plaintiff seeks, primarily, a judicial fixing of the bounds between the contiguous properties. The mere fact that it prays also for a judicial recognition of its ownership to the land may be treated as surplusage and cannot be regarded as changing the real nature of the demand.
Under their exception of no cause or right of action, defendants contend that plaintiff has failed to allege a case justifying a fixing of the bounds because it has not alleged either that the tracts have never been separated or never have had their boundary determined or that the previous fixed bounds are no longer to be seen, in conformity with the requirements of Article 823 of the Civil Code which specifies that any one of the above instances will support an action in boundary.
The point is without merit for the reason that it is obvious, from a reading of plaintiff's petition, that the contiguous tracts have never been separated, judicially or otherwise. Plaintiff, after alleging that one of the contiguous tracts of land is owned by it and that Mrs. Redmann is the owner of the other, sets forth that the defendants have refused to agree to the fixing, extra-judicially, of the boundary line between its property and the property of Mrs. Redmann despite its endeavor to obtain their consent to settle the matter amicably. It is self-evident, in view of these allegations, that the contiguous tracts have never been separated and an averment by plaintiff to that effect would not have made its case more certain. While it is true that Article 823 of the Code provides that an action in boundary will lie only in the three instances specified therein, it is not imperative for a plaintiff to track the exact language contained in the article in order to state a cause of action thereunder, if it appears, from a reasonable interpretation of the allegations, that the redress sought falls squarely within the purview of the statute. See Franz v. Mohr, La. App., 186 So. 114.
[4] During the argument of this case, much has been said by defense counsel concerning plaintiff's allegation in its petition that defendants Lomm and Commercial Iron and Metal Company, Inc., were occupying the tract of land adjacent to plaintiff as tenants of Mrs. Redmann, or otherwise. And counsel contend that, in view of plaintiff's failure to charge that these two defendants are owners or that *Page 307 
they hold as owners with Mrs. Redmann, the petition does not state a cause of action as to them.
This proposition cannot be sustained forasmuch as we view the action to be, primarily, one in boundary in which plaintiff has demanded that the encroachments over the boundary line be removed as an incident to its main demand. Hence, the cause of action is two-fold, (1) for the fixing of the boundary and (2) for a mandatory injunction against defendants, as owners or possessors of the encroachments upon its land, in the event it is determined by the survey that the claimed encroachments exist. If defendants Lomm and Commercial Iron and Metal Company, Inc., did not wish to defend plaintiff's demand against them in this suit, they should have filed exceptions of misjoinder of causes of action and of parties defendant, in limine. Failing in this respect, they cannot now be heard to object to their joinder on an exception of no cause or right of action, as the petition alleges facts which, if true, show that these defendants are not only trespassing on plaintiff's land but that they have actually placed encroachments thereon.
Disposal of defendants' exceptions lead us to a consideration of the merits of the case. Insofar as Mrs. Redmann is concerned, there can be no doubt that plaintiff has alleged and proved a case authorizing a substantial part of the relief prayed for against her. It has shown that the lands are contiguous; that the boundary claimed by it is correct and that certain structures situated on Mrs. Redmann's land (immovables by destination) are encroaching over the boundary line established by the surveyor appointed by the court.
[5] In truth, Mrs. Redmann has not undertaken to make any defense whatever to the case of plaintiff. She did not appear and testify at the trial below. The only propositions asserted by her in her answer are (1) that she is no longer the owner of the property adjoining plaintiff as it was adjudicated to the State of Louisiana and City of New Orleans for non-payment of taxes and (2), alternatively, that she has acquired the property on which the structures encroach by the prescription of thirty years.
The alternative plea of prescription is out of the case for the reason that no evidence has been submitted to establish it.
Mrs. Redmann's claim that the action will not lie against her because her land has been adjudicated to the State and City for non-payment of taxes is not tenable. The adjudication for non-payment of taxes did not wholly divest her of ownership as she retained the right to redeem the property as long as the inchoate legal title remained in either the State or the City. The adjudications did not, ipso facto, have the effect of ousting her of possession or deprive her of holding as owner. See State ex rel. Tulane Homestead Ass'n v. Montgomery, 185 La., 777, 171 So. 28; Gamet's Estate v. Lindner, 159 La., 658,106 So. 22 and other cases.
Indeed, the only serious complaint of Mrs. Redmann, with respect to the judgment appealed from, has reference to that part of the decree ordering her to remove the personal property, consisting of junk, which is encroaching upon plaintiff's land. We shall discuss that portion of the judgment hereafter and shall now turn aside to a consideration of the questions presented relative to the liability of Lomm and Commercial Iron and Metal Company, Inc.
Examination of the pleadings respecting plaintiff's case against Lomm and Commercial Iron and Metal Company, Inc., discloses that plaintiff contends that either Lomm or the corporation or both are occupying the adjoining premises by permission of Mrs. Redmann, either under lease or otherwise; that the corporation is apparently the owner of certain junk which has been piled on plaintiff's property and that the structures and junk which are encroaching on its land were constructed and are owned by either Mrs. Redmann, the corporation or Lomm.
The foregoing charges are denied by the defendant corporation and Lomm in their respective answers. In view of this, it was the duty of plaintiff to submit evidence to sustain its charges in order to justify a decree against either one or both of these defendants. Yet, the record reveals not *Page 308 
one word of testimony produced by plaintiff in support of its averments. Albeit, it appears that plaintiff's counsel, evidently harboring the belief that, since Lomm, who is Mrs. Redmann's son-in-law, had transferred the lot to her in 1932 without cash consideration (the sole consideration being the assumption by Mrs. Redmann of payment of the homestead mortgage existing thereon) and since he, as general manager of the defendant corporation, had occupied the property for many years operating a junk yard thereon, these facts were sufficient to permit the court to draw the inference that Lomm and the corporation were responsible with Mrs. Redmann for the encroachments upon plaintiff's land.
Lomm did not take the stand on his own behalf and the evidence which he gave was elicited as the result of his cross-examination by counsel for plaintiff. He stated, in substance, that he was formerly the owner of the lot adjoining plaintiff's property; that he is general manager of Commercial Iron and Metal Company, Inc., and that the corporation was engaged in the operation of a junk business on the property until some time in the year 1932, after he had sold the lot to Mrs. Redmann, his mother-in-law. He denied positively that either he or Commercial Iron and Metal Company, Inc., were occupying the premises or engaged in business thereon after the year 1932 (suit was filed on March 1st 1939) stating that, shortly after he sold the property to his mother-in-law, it was occupied by a man named Rubins who conducted a junk business thereon; that, later, this business was taken over by one Arthur Roberts, who is operating a junk business on the property at the present time; that neither he nor the defendant corporation have any connection with the business conducted by Roberts and that they do not occupy the premises, do not own and have no control of the junk and other personal property which is said to encroach on plaintiff's land.
The trial judge was wholly dissatisfied with the denials of Lomm and had no confidence whatever in the veracity of his statement. This is made evident by the written opinion of the judge and also by the fact that, during the trial, he evinced a desire that Roberts, whom Lomm had designated as the present operator of the junk business, be brought into court so that he (the judge) could have the benefit of Roberts' testimony in reaching a decision. Accordingly, counsel for plaintiff summoned Roberts and placed him on the stand for cross-examination. Upon timely objection by defense counsel to this method of procedure, the judge observed that he would reserve his ruling until after the evidence of Roberts was heard.
[6] It seems perfectly clear to us that counsel for plaintiff was without any right whatever to call Roberts to the witness stand for cross-examination as he was neither a party defendant nor was he alleged to be an employee of any one of the defendants. This is recognized by the trial judge in his written opinion wherein it is remarked that the court examined Roberts on its own initiative in order that the truth might be ascertained.
We do not feel that it is important to the decision in this case to determine whether the judge had the power to examine Roberts as the court's own witness or whether counsel for plaintiff had the right to cross-examine him as a hostile witness — for, if we assume that these claimed privileges existed, the testimony elicited is not favorable to plaintiff's case.
Examination of Roberts' statement discloses that he claimed that he was in actual occupancy of the lot owned by Mrs. Redmann; that he was operating a junk yard thereon and that he took over the junk business from one Rubins some two years prior to the filing of the present suit. He further said that he was not connected with the Commercial Iron and Metal Company, Inc. or Lomm in any way and asserted that they had nothing whatever to do with the business conducted by him on the lot.
The judge of the District Court did not believe that Roberts and Lomm were telling the truth and we find no error in his conclusion respecting the veracity of their statements. But we doubt very seriously that the disbelief of these witnesses can suffice to support a holding that either Lomm or defendant corporation, or both, *Page 309 
are in possession of the premises; that they have placed thereon the encroachments complained of, or that the transfer of the title by Lomm to Mrs. Redmann was simulated, in the absence of affirmative evidence on the part of plaintiff to sustain its charges. There is no allegation in the petition that Mrs. Redmann is a party interposed for Lomm or that his conveyance to her in 1932 is fraudulent. Nor has any affirmative evidence been submitted by plaintiff to sustain its charge that Lomm and defendant corporation are occupants of the premises or that they own the junk yard or that they own the offending structures and other movables encroaching on plaintiff's land or that they are in any way responsible for, or connected with, the placing of the encroachments on the property. In fact, the only evidence, on which the judgment can be said to be predicated, is the inference drawn by the trial judge that Lomm and defendant corporation are really the parties responsible for the encroachments, which emanates in large part from his disbelief of the statements of Lomm and Roberts and not upon any facts or circumstances submitted by plaintiff in support of its demand. Conceding that the view of our brother below may be ever so just; that his judgment reflects the true state of affairs; still, the question remains as to whether plaintiff has offered evidence, by admissions of the defendants or other wise, in proof of its charges.
[7, 8] The disbelief of witnesses is a valid ground for refusing to consider their testimony in formulating a conclusion on the facts of any given case but it cannot be used as a means to supplant affirmative proof where none exists and thus afford the basis for a judgment. The only exception to this rule, so far as we are advised, occurs in cases where the adverse party has submitted witnesses, subsequently impeached, who have attempted to refute positive evidence to the contrary. In such cases, the disbelief of the witnesses under attack has been held to enhance the credibility of the opposing statements. See Ellis v. Kolb, La. App., 196 So. 89. But this exception can apply only in cases where there is some sort of evidence opposite in its nature which is susceptible of enhancement. Such a situation is not presented here — for the only circumstances to which plaintiff may point (other than the inference sought to be drawn from the discredit of Lomm and Roberts), are that Lomm once occupied the property as a junk yard and that he sold it to his mother-in-law receiving no consideration therefor other than the assumption of the payment of a mortgage resting on the property. These circumstances may be suspicious but they cannot be considered as factual evidence supporting plaintiff's charges and, while they may arouse further suspicions when considered in connection with the disbelief of the testimony of Lomm and Roberts, they cannot be thus transformed into the status of proof. After all, if it be true, as plaintiff claims, that Lomm and the defendant corporation are the owners of the junk yard, it appears to us that it would have been an easy matter for it to submit some type of affirmative evidence. to show that such was the case. But, as the matter now stands, wtihout the submission of any tangible evidence upon which a judgment can be hinged, we feel obliged to dismiss plaintiff's demand as of nonsuit,
The only other matter not heretofore discussed is whether Mrs. Redmann should have been ordered to remove the junk which is encroaching upon plaintiff's land. It seems patent that plaintiff's case as to the validity of this order falls into the same category as its claim against Lomm and Commercial Iron and Metal Company, Inc. There has been no evidence whatever submitted by plaintiff to show that Mrs. Redmann is either the owner of the encroaching movable property or that she has it under her possession and control or that it was placed on plaintiff's land with her knowledge and consent. In these circumstances, it would be highly inappropriate to conclude that she is responsible for its presence on plaintiff's land and; consequently, the judgment against her must be amended by disallowing plaintiff's claim in this respect.
For the reasons assigned, the judgment appealed from is reversed, insofar as the defendants, Nathan Lomm and Commercial Iron and Metal Company, Inc., are concerned, *Page 310 
and it is now ordered that plaintiffs suit against those defendants be and it is dismissed, as of nonsuit, at its costs.
It is further ordered that the judgment appealed from in favor of plaintiff and against the defendant, Mrs. Rose S. Redmann, be and it is amended so as to read as follows:
It is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, New Orleans and Northeastern Railroad Company and against defendant, Mrs. Rose S. Redmann, recognizing plaintiff as the owner of the following described property in the city of New Orleans, Parish of Orleans, State of Louisiana:
"A certain lot of ground, together with the buildings and improvements thereon, situated in the Third District of this City, in Square No. 281, bounded by Burgundy, Press, Montegut and North Rampart Streets, and which lot measures, according to a plan made by H.C. Brown, Deputy City Surveyor, dated the 15th day of December 1905 and annexed to act of purchase by Albert G. Niehues, thirty-two (32') feet, nine (9") inches and five (5"') lines front on Burgundy Street by one hundred and twenty-eight (128') feet, two (2") inches in depth between parallel lines. Being the same property acquired by New Orleans Northeastern Railroad Company from Mrs. Isabelle Suarez, wife of Hugh J. Carey, by act passed before Gustave R. Westfeldt, Jr., Notary Public, on December 30, 1911, registered in the Conveyance Office for the Parish of Orleans in Book 247, Folio 168. And that the boundary line between said property of plaintiff and the property adjacent thereto on the side towards Montegut Street, being the lot of ground conveyed by defendant Nathan Lomm to defendant Mrs. Rose S. Redmann by act passed before A. Melville Wolfson, Notary Public, on February 16, 1932, registered in the Conveyance Office for the Parish of Orleans in Book 466, Folio 502, be, and the said boundary line hereby is, fixed and established in accordance with the location thereof shown on the report and plan of survey made by Ernest I. Eustis, Surveyor appointed by the Court herein, dated April 13, 1939, which report and plan of survey is filed in the record in this case and was offered in evidence at the trial and marked "Exhibit C", and according to which plan of survey and report said boundary line between said two properties begins on the Burgundy Street frontage of said Square at a point one hundred nineteen feet (119'), no inches (0'') and two lines (2''') distant from the Square corner at Montegut and Burgundy Streets and runs thence towards North Rampart Street a distance of one hundred twenty-eight feet (128'), two inches (2'') and no lines (0''') by a course parallel to Montegut Street, and the rear point of said boundary line, as thus fixed and established, is likewise one hundred nineteen (119') feet, no inches (0'') and two lines (2''') distant from the Montegut Street side of said Square."
It is further ordered, adjudged and decreed that the defendant, Mrs. Rose S. Redmann, be and she is hereby ordered and commanded to remove all structural encroachments from the lot of ground belonging to plaintiff, as located and bounded according to the recitals in the first paragraph of the decretal portion of this judgment, within sixty (60) days from and after the date upon which this judgment shall become executory, and that, in the event of a failure of defendant to comply with this provision in this judgment for the removal of all structural encroachments from the property of plaintiff within the delay aforesaid, all said structural encroachments shall be removed from said property of plaintiff at the expense of defendant, Mrs. Rose S. Redmann, through the issuance of the proper writ.
It is further ordered, adjudged and decreed that the defendant, Mrs. Rose S. Redmann, pay all costs incurred in the Civil District Court for the Parish of Orleans, including the fee and expenses of the surveyor appointed by the Civil District Court.
The costs incurred in this court are to be paid by plaintiff, appellee.
Reversed in part.
Amended and affirmed in part.
WESTERFIELD, J., absent. *Page 311