STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

05-855

ADRINNER SMITH

VERSUS

ALLIANCE COMPRESSORS

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 04-01886
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and
Oswald A. Decuir, Judges.

SAUNDERS, J., CONCURS IN THE RESULT.

REVERSED AND REMANDED
FOR A NEW TRIAL.

William Preston Crews, Jr.
P. O. Box 226
Natchitoches, LA 71458-0226
Telephone:  (318) 356-8001
COUNSEL FOR:
        Plaintiff/Appellant - Adrinner Smith

Mark Alan Watson
Todd A. Vance
Stafford, Stewart, & Potter
P. O. Box 1711
Alexandria, LA 71309
Telephone:  (318) 487-4910
COUNSEL FOR:
        Defendant/Appellee - Alliance Compressors

THIBODEAUX, Chief Judge.

The sole issue in this appeal is whether the plaintiff-appellant, Adrinner Smith (Mrs. Smith), was wrongfully denied a new trial on the motion for summary judgment that was filed by her former employer, Alliance Compressors, Inc. (Alliance).  The motion alleged fraud in violation of Louisiana's workers' compensation laws.  Mrs. Smith's attorney failed to file any documentary evidence in opposition to the motion.  The motion for summary judgment was granted based upon the submissions of Allied, and Mrs. Smith's action was dismissed with prejudice.  Her workers' compensation benefits were also terminated.

Mrs. Smith, through new counsel, filed a motion for a new trial in the workers' compensation court based upon her former attorney's failure to offer any opposition to the motion on her behalf.  The motion was denied.

We conclude that the workers' compensation judge abused his discretion in failing to grant a new trial under the circumstances of this case.  The judgment is reversed, and this matter is remanded for a new trial on the motion for summary judgment.

## ISSUE

The issue before us is whether the trial court abused its discretion in failing to grant a new trial to this plaintiff, whose action was dismissed and whose workers' compensation benefits were terminated because of her attorney's negligence in failing to file any admissible documents on her behalf in opposition to a motion for summary judgment.

## FACTS AND PROCEDURAL HISTORY

This case arises out of a disputed claim for compensation filed by an injured worker, Adrinner Smith, against her former employer, Alliance. Mrs. Smith suffered a carpal tunnel injury while working as an operator at a compressor manufacturing plant. On September 9, 2002, she reported a right wrist injury to her employer and was ultimately diagnosed and treated surgically for carpal tunnel syndrome. As a result of the surgery, Mrs. Smith developed the permanent chronic pain condition known as residual sympathetic dystrophy (RSD). It is undisputed that Alliance provided Mrs. Smith with workers' compensation benefits from the time she reported the injury.

Mrs. Smith, however, filed a disputed claim for compensation against Alliance on March 15, 2004, seeking penalties and attorneys' fees for its failure to timely approve a certain behavioral pain management treatment for her. Alliance denied these allegations and, in turn, filed a reconventional demand accusing Mrs. Smith of submitting inflated claims for mileage reimbursements for her travel to doctors treating her workers' compensation-related injuries. The reconventional demand sought the termination of Mrs. Smith's workers' compensation benefits pursuant to La.R.S. 23:1208[1], as well as the dismissal of her pending lawsuit.

Alliance filed a motion for summary judgment on this fraud issue on February 14, 2005. Two mileage reimbursement claim forms submitted by Mrs. Smith were filed in support of the motion. The forms contained occurrences of round trip travel from Mrs. Smith's hometown of Natchitoches, Louisiana to Alexandria,

---

[1]Revised Statute 23:1208(A) states, in relevant part, that "[i]t shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation." Although the statute sets forth criminal and civil penalties (jail time and/or fines) that may be assessed to a person found to be in violation of this statute, the defendant only urged the imposition of the penalty set forth in Subpart E. It states that "[a]ny employee violating this Section shall, upon determination by [a] workers' compensation judge, forfeit any right to compensation benefits under this Chapter." La.R.S. 23:1208(E).

Louisiana in 2003 and 2004. The forms were prepared and signed by Mrs. Smith and contained averments that the information being provided was true. Alliance also submitted the affidavit of Mark Goldich, the adjuster who administered Mrs. Smith's claims, to establish that Mrs. Smith had received reimbursements based on the information provided in those forms. The total amount of alleged overstated mileage is 414 miles, resulting in total overpayments to Mrs. Smith in the amount of $132.48.[2]

To establish that Mrs. Smith's reimbursement requests were inflated, Alliance submitted a report and affidavit prepared by its private investigator, Sherman Cravins. Mr. Cravins provided mileage calculations, as well as his corresponding description of the route he traveled in order to establish what he contended was the true distance from Mrs. Smith's home in Natchitoches to Alexandria. Based upon this information, Alliance argued that Mrs. Smith overstated her mileage by fourteen miles on each of seven visits to her pain management physician, Dr. Stephen Katz, in Alexandria. These alleged overstatements totaled 98 miles. She is alleged to have overstated her total mileage by eight miles on each of six visits to the office of her treating psychologist, Dr. James Quillen, for a total of 48 miles in overstated mileage.

Mrs. Smith was also accused of submitting mileage reimbursement requests for two office visits to Dr. Quillen that she never attended. The dates of those visits are October 16, 2003 and February 25, 2004. Mrs. Smith sought reimbursement for 134 miles of round trip travel for each of those visits, which totaled 268 miles in overstated mileage. Alliance asserted that no medical records existed that memorialized office visits with Dr. Quillen on those dates. Additionally, investigator Cravins averred in his affidavit and report that he did not observe Mrs. Smith visit Dr. Quillen's office on February 25, 2004.

---

[2]Mileage reimbursements were paid at a rate of $.32 per mile.

The fact that Mrs. Smith's attorney had not filed any opposition to the motion and evidence submitted by Alliance became apparent to Mrs. Smith on the day of the motion hearing. When the workers' compensation judge correctly denied Mrs. Smith's attorney's request to have his client testify live at the hearing, because the rules of civil procedure governing summary judgments disallow the submission of oral witness testimony as evidence in a motion for summary judgment proceeding,[3] Mrs. Smith's attorney admitted that he did not have any documentary evidence available to submit in opposition to the motion. It was at this time that Mrs. Smith also discovered that he failed to file a brief or any evidence in opposition to the motion prior to the hearing. Although the attorney requested a court recess so that he could assist his client in preparing an affidavit that could be filed with the court, the workers' compensation judge denied the request, ruling that sufficient time existed before the hearing to do so.

The judge then reviewed Alliance's evidentiary submissions and granted the motion for summary judgment. The court found that Mrs. Smith failed to satisfy her burden of showing that there were genuine issues as to the material facts that had been presented by Alliance. Mrs. Smith's lawsuit was dismissed with prejudice, and her workers' compensation benefits were terminated.

Mrs. Smith then hired a new attorney who timely filed a motion for a new trial. In that motion, she argued that her former counsel's neglect in failing to present a defense to the motion had been wrongly imputed to her. Mrs. Smith attached an affidavit to that motion, in which she denied that she knowingly submitted false or inflated mileage reimbursement requests to her employer. In apparent efforts to establish that she relied solely on her lawyer to prepare a proper

---

[3]Article 966(B) of the Code of Civil Procedure states that a summary judgment is to be rendered based on any pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits.

4

defense to the motion for summary judgment, she detailed her very limited knowledge of, and involvement in, the preparations for the hearing on the motion for summary judgment. Additionally, she made statements regarding the existence of a diary in which she recorded all of her workers' compensation-related travel. Mrs. Smith claimed that this diary showed that there are reimburseable expenses for which she had not yet filed claims. She further stated that she sometimes made multiple trips to a doctor before she was able to be seen because appointments had not been approved by the workers' compensation administrator. Finally, she also averred that she was always accompanied by her husband and/or daughter, or both, on these trips. Mrs. Smith intended these averments to serve as proof that she could offer evidence challenging the facts that were presented by Alliance in support of its motion for summary judgment.

The judge rejected the arguments and denied the motion for a new trial. The court concluded that Mrs. Smith's affidavit failed to present any information to the court that would establish that she could have carried her burden of proof on the motion for summary judgment. In addition, the court reasoned that Mrs. Smith's former counsel had timely notice of the fact that an adequately supported motion for summary judgment had been filed and that certain evidence would need to be submitted to the court in opposition to it. Absent proof that there was an element of surprise as to the defense that Mrs. Smith should have been prepared to present, the court found that it did not have a basis for granting a new trial on the motion for summary judgment.

Mrs. Smith appealed this ruling, arguing that she is an innocent client and that the workers' compensation judge erred when he imputed the negligent actions of her former attorney to her. She also argues that, during the hearing on the motion for a new trial, the judge erred in failing to find that she presented sufficient

proof, through her affidavit, of her ability to offer evidence of genuine issues of material fact that could have precluded the granting of the motion for summary judgment.

Alliance argues that the judgment should stand because Mrs. Smith failed to present any evidence regarding the applicability of any statutory grounds available for the granting of a new trial, failed to establish any genuine issues as to the facts it established in its motion for summary judgment, and argues that her lawyer's error is an insufficient basis for the granting of a new trial.

## LAW AND DISCUSSION

Generally, new trials are granted in the interest of justice and are largely left to the discretion of the trial judge. *Succession of Robinson*, 172 So. 429 (1937). Trial courts are vested with the power to grant new trials on either discretionary or peremptory grounds. La.Code Civ.P. arts. 1972, 1973. There are three peremptory grounds that may serve as the basis for granting a new trial:

> A new trial shall be granted, upon contradictory motion of any party, in the following cases:
>
> (1) When the verdict or judgment appears clearly contrary to the law and the evidence.
>
> (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
>
> (3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.

La.Code Civ.P. art. 1972. The discretionary grounds for granting a new trial are set forth in La.Code Civ.P. art. 1973, which states that a new trial may be granted at the discretion of the judge ". . . in any case if there is good ground therefor, except as otherwise provided by law." This has been interpreted to mean that "[w]hen the trial judge is convinced by his examination of the facts that the judgment would result in

a miscarriage of justice, a new trial should be ordered." *Lamb v. Lamb*, 430 So.2d 51, 53 (La.1983) (citations omitted).

Appellate review of the grant or denial of a motion for new trial under La.Code Civ.P. arts. 1972 and 1973 is governed by the abuse of discretion standard, which prohibits this court from reversing the actions of a trial court unless an abuse of discretion can be demonstrated. *Davis v. Coregis*, 2000-475 (La.App. 3 Cir. 12/27/00), 789 So.2d 7, *writ denied*, 2001-292 (La. 3/30/2001), 788 So.2d 1192. The supreme court has also held, however, that appellate courts should not hesitate to reverse trial court judgments upon review of rulings on motions for new trial, if allowing the lower court judgment to stand would serve "to permit technical pleading rules to triumph over actual justice." *Lamb*, 430 So.2d at 54.

### *Peremptory Grounds*

We find that there are no peremptory grounds that could have served as a basis for the granting of a new trial in this case. *See* La.Code Civ.P. art. 1972. As the mover for summary judgment, Alliance bore the initial burden of presenting a *prima facie* case of fraud in violation of La.R.S. 23:1208. To do so, Alliance was required to show that (1) a false statement or representation, (2) was willfully made, (3) for the purpose of obtaining workers' compensation benefits. *See Resweber v. Haroil Const. Co.*, 94-2708, 94-3138 (La. 9/5/95), 660 So.2d 7. To establish its *prima facie* case, Alliance was required to prove by a preponderance of the evidence that the facts it was presenting, when taken as whole, were more probable than not. *Schouest v. J. Ray McDermott & Co., Inc.*, 411 So.2d 1042 (La.1982). In other words, what constitutes *prima facie* evidence is evidence that is sufficient to establish a given fact, which if not rebutted or contradicted, will remain sufficient. *Artificial*

7

*Lift, Inc. v. Production Specialties, Inc.*, 93-103 (La.App. 3 Cir. 11/3/93), 626 So.2d 859, *writ denied*, 94-0112 (La.3/11/94), 634 So.2d 394.

First, we find that the record is clear that Alliance satisfied its burden of establishing a *prima facie* case of fraud in violation of La.R.S. 23:1208. Alliance filed the actual reimbursement claim forms that contained the purported incorrect mileage listings with the workers' compensation court, all of which appear to have been completed by Mrs. Smith in her own handwriting. In addition, the forms were signed by Mrs. Smith, with the declaration in each, that all information provided was true and accurate. Alliance also submitted the report and supporting affidavit of the private investigator who traveled from Mrs. Smith's home in Natchitoches to Alexandria, which detailed the route taken to calculate the miles actually traveled, and established the apparent mileage overstatements. Finally, evidence was submitted that Mrs. Smith did not attend two office visits for which she sought reimbursement. This was also established through the report and supporting affidavit of investigator Cravins, who surveilled Mrs. Smith on the date of one of those visits, and through the medical records of the doctor Mrs. Smith claimed to have visited on those dates. No evidence was presented in opposition to the facts presented by Alliance; therefore, the judgment of the workers' compensation court cannot be said to have been clearly contrary to the law or evidence. *See* La.Code Civ.P. art. 1972(1). This peremptory ground is, thus, not applicable. *See id.*

Second, there was no argument asserted on behalf of Mrs. Smith, and we found no evidence in the record, that would suggest that either she or her attorney discovered new evidence after the hearing on the motion for summary judgment that could not have been obtained with due diligence prior to the hearing. *See* La.Code Civ.P. art. 1972(2). Accordingly, it is clear that La.Code Civ.P. art. 1972(2) is inapplicable to these facts as well.

Finally, we find La.Code Civ.P. art. 1972(3) to be inapplicable to these facts. There was no chance of jury misbehavior because this matter was decided by the workers' compensation judge; therefore, it cannot be established that a new trial was warranted on those grounds. *See* La.Code Civ.P. art. 1972(3).

### *Discretionary Grounds*

We do determine, however, that the workers' compensation judge abused his discretion in failing to grant a new trial to the plaintiff on discretionary grounds. *See* La.Code Civ.P. art. 1973. We believe that the workers' compensation judge was compelled to use his discretionary power to grant a new trial in order to prevent a miscarriage of justice in this case, and we find that he erroneously allowed technical pleading rules to triumph over justice. *See Lamb*, 430 So.2d 51. As was stated by the supreme court in *Lamb*, a proper application of La.Code Civ.P. art. 1973 necessitates a careful examination of the facts and circumstances of each case. In this case, we believe that the trial court focused on the technical application of the law, without giving due regard to the inherent injustice the losing party would suffer because of the unilateral negligence of her lawyer. *Lamb*, 430 So.2d 51. This state's jurisprudence does not support the automatic imposition of a consequence as serious as the loss of one's day in court and the termination of all workers' compensation benefits under such circumstances. *See id*.

The supreme court's decision in *Lamb*, *supra*, and its earlier decision in *Hardy v. Kidder*, 292 So.2d 575 (La.1973), are equally supportive of our decision on this issue. In *Hardy*, a case involving the rendering of a default judgment, the supreme court reversed itself on rehearing and held that good grounds existed for the granting of a new trial in that case because the defendant's attorney was solely at fault in failing to provide an answer to the plaintiffs' petition and in failing to present an

available and absolute defense on the defendant's behalf. In *Lamb*, the supreme court also recognized that a default judgment entered because the litigant's attorney failed to file an answer constituted a miscarriage of justice that should be corrected with a new trial. *Lamb*, 430 So.2d 51.

*Hardy*, 292 So.2d 575 and *Lamb,* 430 So.2d 51, are analogous to the facts of this case because they both address whether a litigant is entitled to a new trial when he has suffered the loss of the valued opportunity of having his day in court, solely due to attorney negligence. In both cases, just as in this case, the litigants seeking the new trials all manifested an intention to challenge their opponents' assertions on the merits, prior to the summary rendering of judgments against them. In *Lamb*, before a default judgment was rendered against the defendant, the court found it apparent that she intended to do so because she had already filed a separate lawsuit against the plaintiff and also because of her prior involvement in negotiations with the plaintiff's attorney in the matter at issue. *Id*. While that matter remained pending, the defendant was unrepresented at a point in time, and opposing counsel moved for confirmation of the default judgment against her, taking advantage of her former lawyers' failure to file an answer to adequately protect his client's interests. *Id*. The defendant was unaware of her attorney's failure. *Id*.

Similarly, in *Hardy*, 292 So.2d 575, the defendant's lawyer failed to file an answer on his behalf, resulting in the plaintiff being able to obtain a default judgment. The defendant sought a stay of proceedings pending his separate bankruptcy proceedings, making it clear that his bankruptcy status was a defense he intended to assert. *Id*. However, a default judgment was entered against him, despite the fact that he was eventually adjudicated bankrupt. *Id*. The court recognized that the defendant suffered this fate either because his attorney failed to file an answer and assert the defense due to a misunderstanding that the plaintiff's attorney would not

10

seek a default judgment or simply because he was negligent in failing to file the answer. *Id*. The default judgment was vacated on appeal. *Hardy*, 202 So.2d 575.

In this case, just as in those, Mrs. Smith expressed her intention to defend against the motion. She appeared at the hearing prepared to testify on her behalf. She brought with her the travel diary that she maintained and was accompanied by her husband who was also prepared to testify. Unfortunately, she had been ill-advised as to the admissibility of such testimony; nevertheless, her appearance in court and her willingness to participate in her defense is relevant to our view of the injustice that ultimately transpired. *See id.*

*Hardy* and *Lamb* both emphasize the need for the reviewing court to exercise particular caution in examining the circumstances underlying judgments that summarily deny the opportunity for a decision on the merits in an action due to the inherent injustice that can be affected if the litigant is not responsible for the failure. *See Hardy*, 202 So.2d 575; *see also, Lamb*, 430 So.2d 51; *Robinson*, 172 So.2d 429. The importance and applicability of this consideration in proceedings involving the review of motions for new trial is not new and was articulated by the supreme court in its *Succession of Robinson* decision:

> The trial judge's ruling is subject to review and is not final, and where an injustice is done and substantial rights are lost through mere technicalities, it is our duty to interfere. Such arbitrary and harsh rulings prolong litigation and do not end it as is shown by the cases themselves. . . . The modern trend of the jurisprudence is to render justice upon the merits of the controversy, rather than defeat justice upon technicalities.

*Robinson*, 172 So.2d at 431-32. During its survey of decisions that supported the granting of new trials when justice so required, the court stressed the fact that "form must yield to the substance and call of justice" in the consideration of such motions, and found it fitting to quote the following language in this regard:

When the record of a suit discloses enough to satisfy the court that the whole story of the case is not told, that essential facts have not been given in evidence and important documents have been omitted, and that substantial justice cannot be done between the parties in the state of the record as filed here, the court will, in its discretion, in the interest of justice, remand the case. *Muller v. Hoth*, 105 La. 246, 29 So. 709.

. . . .

Lawsuits are not games in which courts are the mere referees or umpires, and in which technicalities must be allowed to triumph over actual justice. It is our duty to permit litigants all reasonable opportunity to place before us all facts bearing on the issues involved. Manifestly, the substantive rights of the defendants here would have been denied them by a refusal of the new trial [in a case in which their lawyer became confused by the rule of the court and inadvertantly overlooked the case]. [*Burthe v. Lee, et al.*, 152 So.100, 101-02 (La.App. 1934)].

*Robinson*, 172 So.2d at 430-31.

The *Robinson* court concluded that it would serve an injustice to allow a judgment resulting in the dismissal of an action to stand, in a case in which reasonable reliance by a party upon a neglectful attorney caused, or contributed to, the resulting decision. *Id.* Moreover, the court aptly ruled that the appellate court should not hesitate to afford relief against judgment, "irrespective of any issue of inattention or neglect, when the circumstances under which the judgment is rendered show the deprivation of the legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be unconscionable and inequitable." *Id.* at 431 (quoting *New Orleans v. Le Bourgeois*, 23 So. 542 (La.1898)). We find the same considerations relevant and valued by today's courts.

Accordingly, we find that, when presented with the motion for a new trial, the workers' compensation judge erred in failing to recognize the unilateral error committed by Mrs. Smith's former attorney and failed to guard against the injustice that would be served if the summary judgment were allowed to stand. *Lamb*, 430

So.2d 51. Mrs. Smith did not know of her attorney's failure to prepare a proper defense on her behalf, and she made a sufficient demonstration to the court as to the circumstances that led to her inability to provide a timely defense to the motion for summary judgment. She, likewise, sufficiently apprised the court of facts from which submissions could have been made to challenge the motion for summary judgment during a new hearing. *See Robinson*, 172 So. 429 (finding sufficient the affidavits submitted in support of a motion for new trial, which contained averments of the evidence that could be offered during a rehearing). Therefore, we find that the harsh result that has occurred because of the omissions of Mrs. Smith's former counsel – the loss of her opportunity to have her day in court and the termination of her workers' compensation benefits – constitutes a miscarriage of justice. We find that Mrs. Smith is entitled to a new trial.

## CONCLUSION

For the foregoing reasons, we reverse the Office of Workers' Compensation's denial of the timely motion for a new trial. The case is remanded to the workers' compensation court for a new trial on the motion for summary judgment. The costs of this appeal are assessed to the defendants-appellees, Alliance Compressors, Inc.

**REVERSED AND REMANDED FOR A NEW TRIAL.**

NUMBER WCA05-0855

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

ADRINNER SMITH

VERSUS

ALLIANCE COMPRESSORS

SAUNDERS, J., concurs in the result.

I agree with ultimate decision reached by the majority in this case. I disagree, however, with the finding that Allied made a prima facie case of fraud regarding the alleged over stated mileage. First, I note that Mrs. Smith is entitled to reimbursement for reasonable and necessary distances traveled. She is not required to take the absolute shortest route. Next, the investigator did not follow Mrs. Smith on the visits. He merely calculated what he believed the mileage should be. The distance claimed by Mrs. Smith is only slightly over the investigator's calculated distance and is identical for each trip to her respective doctors indicating that she may have just taken a different route from that planned by the investigator. Furthermore, I do not believe that the slight difference in mileage claimed by Mrs. Smith and the investigator indicate a willful intent to defraud.

I find this case similar to *Noel v. Home Health Care 2000, Inc.*, 03-1280 (La.App. 3 Cir. 3/3/04), 867 So.2d 945 wherein this court, noting that the shortest route is not required, found that the plaintiff did not wilfully misrepresent her mileage claims despite the fact her submission was modestly higher than distances calculated by an investigator and MapQuest. These cases stand in marked contrast to *Johnson v. Basic Indus., Inc.*, 97-1136 (La.App. 3 Cir. 4/15/98) where plaintiff claimed 20-24

miles for a 7.8 mile round trip, 10 miles for a .8 mile round trip, and 25 miles for a 3.2 mile round trip. Such a gross overstatement clearly indicates a wilful intent to defraud. Conversely, given the facts of this case, I simply do not find that a wilful intent on Ms. Smith's part was demonstrated.